HEATHER E. WILLIAMS, Bar #122664
Federal Defender
KARA R. OTTERVANGER
Florida Bar No. 0112110
Assistant Federal Defender
2300 Tulare Street, Suite 330
Fresno, California 93721-2226
Telephone: (559) 487-5561
Kara_Ottervanger@fd.org

Counsel for Defendant
CHARLES GEARHEART

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 6:23-mj-006-HBK |
| *Plaintiff,* | |
| vs. | **NOTICE OF MOTION AND MOTION TO SUPPRESS; MEMORANDUM OF POINTS AND AUTHORITIES; REQUEST FOR EVIDENTIARY HERING** |
| CHARLES GEARHEART, | |
| *Defendant,* | Date: November 14, 2023 |
| | Time: 10:00 a.m. |
| | Judge: Hon. Helena M. Barch-Kuchta |

**TO: PHILLIP TALBERT, UNITED STATES ATTORNEY; JEFFREY SPIVAK AND CHAN HEE CHU, ASSISTANT UNITED STATES ATTORNEYS; AND SEAN ANDERSON, YOSEMITE LEGAL OFFICER, COUNSEL FOR PLAINTIFF:**

**PLEASE TAKE NOTICE** that on November 14, 2023, or as soon thereafter as this matter can be heard, in the Eastern District of California, before the Honorable Magistrate Judge Helena Barch-Kutcha, defendant Charles Gearheart, through counsel Kara Ottervanger, will move this Court for an order suppressing all evidence and statements obtained as the result of (1) the warrantless search of the vehicle in which Mr. Gearheart was a passenger, and (2) violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).

This motion is made pursuant to the United States Constitution, including the Fourth and Fifth Amendments; Federal Rule of Criminal Procedure Rule 12(b); Eastern District of California Local Rule 430.1; and all applicable statutes and case law.

1      Pursuant to Local Rule 430.1(h), Mr. Gearheart respectfully requests an evidentiary

2   hearing on the issues raised in this motion, which he expects to last between 2-5 hours for

3   testimony and argument. This motion is supported by this Notice of Motion; the Memorandum of

4   Points and Authorities; the record of this case; and such argument and further law and evidence as

5   may be presented at the time of the hearing.[1]

6                                              Respectfully submitted,

7
    Dated:  September 25, 2023                 HEATHER E. WILLIAMS
8                                              Federal Defender

9
                                               /s/  Kara R. Ottervanger
10                                             KARA R. OTTERVANGER
                                               Assistant Federal Defender
11                                             Attorney for Defendant
                                               CHARLES GEARHEART
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   [1] Mr. Gearheart further reserves the right to amend or supplement this Motion with additional
    information should it become available. Specifically, there at least eight rangers visible on the
27   body worn camera (BWC) footage provided to Mr. Gearheart, believed to be Rangers Dell Isola,
    Blade, Zavesky, Hesse, Rippetoe, O'Brien, King, and Terry, based on Ranger Dell Isola's report.
28   However only Rangers Dell Isola and Zavesky's reports, and only some of the eight rangers'
    videos, have been provided to Mr. Gearheart.

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

I.    **Factual Background**

3     On June 12, 2023, at approximately 11 pm, Ranger Christopher Dell Isola approached

4   Charles Gearheart's van because it was parked at night with "foil shades covering the driver's side,

5   passenger's side and front windows" indicating to him that the occupant was probably engaging

6   in camping out of bounds. (*Exhibit 1* – Ranger Dell Isola's Report at 1). Although the first part of

7   the interaction is not recorded on his body worn camera (BWC), Ranger Dell Isola indicated in his

8   report that he knocked and announced his presence as police, and Mr. Gearheart advised that he

9   would put clothes on and come to the door. *Id*. Mr. Gearheart did just that, and, beginning at 0:30

10  when the audio of Ranger Dell Isola's BWC turns on, the following conversation ensued:

11        Charles Gearheart:      . . . my pass expires tomorrow, they said, so I just wasn't really

12                                sure what to do.

13        Ranger Dell Isola:      Ok, yeah, so you're still gonna have to camp outside the park,

14                                uhm, 'cause you can't just camp in a turnout in the park.

15        Charles Gearheart:      Ok.

16        Ranger Dell Isola:      Uhm, do you have a driver's license?

17        Charles Gearheart:      Uh, I do.

18        Ranger Dell Isola:      Uh do you, do you know where it is in the vehicle?

19        Charles Gearheart:      Do I have to give you all that right now?

20        Ranger Dell Isola:      Yeah.

21        Charles Gearheart:      Just 'cause I'm, you know. Ok.

22                                [Mr. Gearheart turned to comply with Ranger Dell Isola's request

23                                that he produce a driver's license.]

24        Ranger Dell Isola:      Where is it up there?

25        Charles Gearheart:      Yeah, it's up here, in my.

26        Ranger Dell Isola:      Ok, just give me your name and date of birth, just give me a

27                                second.

28        Charles Gearheart:      I'm sorry about the dog (inaudible).

1                            [Mr. Gearheart provided his name and the spelling, as well as his

2                            date of birth and the fact that he was a California licensed driver.]

3      Ranger Dell Isola:    Ok, just give me one second.

4      Ranger Dell Isola:    I'm gonna run his name and DOB. It's kinda like a weird setup

5                              with his dog, so ….

6                               (overlapping)

7      Charles Gearheart:    I can put my shoes on and come out and shut my door.

8      Ranger Dell Isola:    Uh., yeah, let's do that.

9          . . .

10                            [Mr. Gearheart puts on his sandals and steps out of the vehicle and

11                            adjusts his belt before putting his hands up and saying "sorry."]

12      Ranger Dell Isola:    Do you have any guns on you?

13      Charles Gearheart:    No, I don't.

14      Ranger Dell Isola:    Any guns in the vehicle?

15      Charles Gearheart:    No, I'm, I'm just trying, I was just trying to tighten my belt.

16      Ranger Dell Isola:    Any other weapons on you, knives?

17      Charles Gearheart:    No, I have nothing on me.

18                            [after a brief silence] You can pat me down.

19      Ranger Dell Isola:    Alright, give me one second.

20      Ranger Dell Isola:    Good copy on all, code 4 (inaudible)

21                            Good copy, uhm, can you send me a second?

22    (*Exhibit 2* – Ranger Dell Isola's body worn camera at 0:30).[2]

23      Ranger Dell Isola's report states that when Mr. Gearheart stepped out of the vehicle he saw

24 a water pipe inside the back of the van and suspected it may be used for marijuana. (*Ex. 1* at 1).

25 While Ranger Dell Isola conducted a pat-down of him, Mr. Gearheart became faint twice, briefly

26 losing consciousness the second time. After Mr. Gearheart was medically cleared by Ranger

27

28

---

[2] Reference to body worn camera (BWC) footage will be cited as HOUR:MINUTE:SECOND of elapsed time on the video at the start of the cited portion, rather than to the timestamp in the top right corner of the video. When there is no hour applicable, it will read MINUTE:SECOND.

1    Stephany Hesse and EMT, Ranger Dell Isola advised him that the rangers were going to conduct

2    a search of the van because of the water pipe. Mr. Gearheart advised Ranger Dell Isola that the

3    pipe is for tobacco, so Ranger Dell Isola told him to take it out of the van for his inspection. Mr.

4    Gearheart complied, placing the pipe on the ground next to the van for Ranger Dell Isola's

5    inspection. Ranger Dell Isola told Mr. Gearheart that he believed that it was tobacco. However,

6    Ranger Blade later alleged that the smell was marijuana, so the rangers proceeded with a

7    warrantless search of Mr. Gearheart's van. (*Ex. 1* at 2, "Officers Terry, Zavesky and I conducted

8    a Carroll search of the van.")

9          **II.      This Court must suppress all evidence obtained as the result of the warrantless**

10                **search of Mr. Gearheart's van.**

11          "The Fourth Amendment guarantees the right of citizens to be free from unreasonable

12    governmental searches." *United States v. Caseres*, 533 F.3d 1064, 1069 (9th Cir. 2008) (citing

13    U.S. Const. amend. IV). In *Riley v. California*, 134 S. Ct. 2473 (2014), the United States Supreme

14    Court explained that a judicial warrant is generally required to satisfy the Fourth Amendment's

15    reasonableness requirement. *Id.* at 2482. This is because "a warrant ensures that the inferences to

16    support a search are 'drawn by a neutral and detached magistrate instead of being judged by the

17    officer engaged in the often competitive enterprise of ferreting out crime.'" *Id.* (quoting *Johnson*

18    *v. United States*, 333 U.S. 10, 14 (1948)). "Warrantless searches by law enforcement officers 'are

19    *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established

20    and well-delineated exceptions.'" *United States v. Cervantes*, 703 F.3d 1135, 1138-39 (9th Cir.

21    2012) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). "Because warrantless searches .

22    . . are *per se* unreasonable, the government bears the burden of showing that a warrantless search

23    . . . falls within an exception to the Fourth Amendment's warrant requirement." *Id.* at 1141 (citing

24    *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001)); *accord United States v. Scott*, 705

25    F.3d 410, 416 (9th Cir. 2012). Under the exclusionary rule, evidence obtained in violation of an

26    individual's Fourth Amendment rights, including any "'fruit of the poisonous tree,'" is excluded

27    from a criminal trial. *Cervantes*, 703 F.3d at 1143; *see also Alderman*, 394 U.S. at 171 ("The

28    exclusionary rule . . . excludes from a criminal trial any evidence seized from the defendant in

1    violation of his Fourth Amendment rights. Fruits of such evidence are excluded as well." (citations

2    omitted)).

3        In this case, the rangers did not obtain a warrant prior to searching Mr. Gearheart's vehicle.

4    Thus, the search is *per se* unreasonable and the government bears the burden of proving that the

5    search falls within one of the "well-delineated exceptions" to the warrant requirement. *Cervantes*,

6    703 F.3d at 1139 (quoting *Katz*, 389 U.S. at 357) (internal quotation mark omitted). Presumably,

7    the government intends to rely on the "automobile exception," as established in *Carroll v. United*

8    *States*, 267 U.S. 132 (1925). Under the "automobile exception," a law enforcement officer may

9    conduct a warrantless search of a "readily mobile" vehicle if "probable cause exists to believe it

10   contains contraband." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). Probable cause exists if

11   "the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the

12   belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S.

13   690, 696 (1996).

14       For four separate reasons, the rangers lacked probable cause to search Mr. Gearheart's van.

15   First, the entire search was invalid from the start because the rangers only obtained their probable

16   cause due to unnecessary questioning after completing the mission of an underlying traffic stop.

17   Second, there was no probable cause to search the vehicle because the discovery of a tobacco water

18   pipe that did not smell like marijuana does not supply probable cause to believe that marijuana or

19   related contraband is in the vehicle. Third, even if the pipe smelled like marijuana, the probable

20   cause regarding contraband would not extend further than the seized water pipe itself. No

21   marijuana smell or other objective facts pointed to probable cause to find further contraband once

22   the pipe was seized. Because the rangers knew exactly where the potential contraband was, their

23   continued search of the vehicle was unreasonable and not justified by the initial probable cause.

24   Fourth, the entire search of the vehicle was invalid because probable cause to believe that

25   marijuana is in a vehicle does not authorize a search in light of marijuana's effective

26   decriminalization, even on federal land.

27       / /

28       / /

1        **A.  The Search was unconstitutional due to prolonging the traffic stop.**

2        A seizure violates the Fourth Amendment when a Ranger "extend[s] a traffic stop with

3    tasks unrelated to the traffic mission, absent independent reasonable suspicion." *United States. v.*

4    *Willie Williams*, No. 22-10052, 2023 WL 5925893, *1 (9th Cir., Sep. 12, 2023) (unpublished)

5    (quoting *United States v. Landeros*, 913 F.3d 862, 866 (9th Cir. 2019). A "traffic mission" is

6    "limited to addressing the traffic violation that warranted the stop and attending to safety related

7    concerns." *Id*. (internal citations removed); *United States v. Evans*, 786 F.3d 779, 785 (9th Cir.

8    2015); *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). Tasks not related to the traffic

9    mission are "unlawful if they add time to the stop, and are not otherwise supported by independent

10   reasonable suspicion of wrongdoing." *Landeros*, 913 F.3d at 866 (quoting *Rodriguez*, 575 U.S. at

11   357) (internal citations removed). The Ninth Circuit further held that "[e]ven if . . .the officers'

12   suspicion of a stolen car was not dispelled by the time of their consent and marijuana inquiries,

13   questions about consent to search a car and marijuana possession are not sufficiently tailored to

14   determining whether a car has been stolen." *Williams*, 2023 WL 5925893, at *2.

15       In *Williams*, the officers initiated a stop "upon observing that the brake lights of Williams's

16   car were not functioning." *Williams*, 2023 WL 5925893, *1. The government argued that the

17   mission also included an investigation into whether the vehicle was stolen, as there was no

18   registration information available during the initial records check. But, as the Ninth Circuit pointed

19   out, "the officer's consent and marijuana inquiries came *after* the objective evidence revealed that

20   Williams was the car's registered owner" because the officer "had reviewed Williams's

21   registration card, which matched the car's license plate and listened Williams as the registered

22   owner of the car." *Id*.

23       In this case, Ranger Dell Isola's actions were similar to those in *Williams*. The initial

24   contact was because Ranger Dell Isola believed that the occupant of the van was camping out of

25   bounds. Mr. Gearheart explained why he was occupying his van, and Ranger Dell Isola informed

26   him that he will have to camp outside the park. (*Ex. 2* at 0:30). Ranger Dell Isola then obtained

27   information to verify Mr. Gearheart's identity. (*Ex. 2* at 1:20). Although it does not appear that

28   Ranger Dell Isola ever called in Mr. Gearheart's identification, Ranger Dell Isola had everything

1    necessary to complete the mission of the traffic stop within the first two minutes of the recorded

2    encounter. Instead, at minute 2:58, Ranger Dell Isola questioned Mr. Gearheart on guns on his

3    person or in the vehicle, unnecessarily prolonging the interaction. Ranger Dell Isola then

4    responded to something he was being told over the radio with "Good copy on all" and "Good copy,

5    uhm, can you send me a second." (*Ex. 2* at 3:48). Ranger Dell Isola described this time period

6    between 2:05 and 4:02 in his report as "taking a moment to listen to radio traffic." (*Ex. 1* at 1).

7    Instead of simply confirming Mr. Gearheart's identity and issuing him a citation for camping out

8    of bounds, Ranger Dell Isola took Mr. Gearheart up on his offer to be patted-down for weapons,

9    further unnecessarily prolonging the traffic stop. (*Ex. 2* at 4:12).

10         The questioning about weapons exceeded the mission of the detention that was initially

11   justified by Ranger Dell Isola's observations of a van camping out of bounds. Under *Rodriguez*

12   and *Williams*, additional reasonable suspicion that Mr. Gearheart was presently armed and

13   dangerous or had additional contraband was necessary in order to continue the detention for this

14   unrelated inquiry. Because no such suspicion existed, anything that the rangers found as a result

15   of this extension of the stop must be suppressed. Therefore, the water pipe that the officers

16   observed, and the additional evidence that they collected during an ensuing *Carroll* search, are all

17   fruits of the unlawfully prolonged detention and must be suppressed.

18         **B. The search was unconstitutional because a tobacco water pipe does not give**

19             **probable cause to believe that a vehicle contains contraband.**

20         Even if the rangers lawfully uncovered Mr. Gearheart's water pipe, this discovery provides

21   no basis for probable cause to believe that contraband will be found in his vehicle. A tobacco water

22   pipe is not contraband, and nothing in the rangers' reports or video suggests that they believed a

23   tobacco would establish probable cause to search for contraband. The asserted probable cause in

24   this case is based solely on the notion that the pipe may be used for marijuana. Ranger Dell Isola

25   confirmed that he did not smell anything in the van and there was no other probable cause besides

26   seeing the water pipe. (*Ex. 2* at 38:14). When Mr. Gearheart told Ranger Dell Isola that he used

27   the pipe for tobacco, Ranger Dell Isola had him put the pipe on the ground outside the vehicle for

28   inspection, as follows:

1    Ranger Dell Isola: [to Mr. Gearheart] Ok, so I'm gonna check on that . . . Grab that pipe
2    out, and just put it on the ground. Once you put it on the ground, you're
3    gonna come back over here, alright?

4    Mr. Gearheart:    Yes sir. [Mr. Gearheart complies]

5    Ranger Dell Isola: Ok, so you can walk back over to the car.

6    Ranger Dell Isola: [upon inspecting the pipe] Yeah it smells like tobacco, I think we are
7    good.

8    Ranger Dell Isola: [to Mr. Gearheart] Ok, so it smells like tobacco. Uhm, so what we are
9    gonna do is, uhm, I'm gonna have you stay here tonight. Since you
10   passed out there, uhm they cleared you medically . . .

11   Ranger Dell Isola examined the pipe and recognized that it smelled like tobacco, as Mr.
12   Gearheart said. Despite confirming that he did not smell marijuana in the vehicle, and that he did
13   not smell or see marijuana in the pipe that he had originally seen in the van, Ranger Dell Isola
14   allowed a warrantless vehicle search of Mr. Gearheart's van to proceed. Even when Mr. Gearheart
15   protested, "It's not weed, its tobacco, you know what I mean, if you – you already said you didn't
16   smell it . . ." Ranger Dell Isola responded, "No, we're gonna, we're gonna go through with
17   searching your vehicle." (*Ex. 2* at 41:52).

18   Given that the arresting officer, Ranger Dell Isola, admitted that the water pipe he saw in
19   the van smelled like tobacco, not marijuana, there was never probable cause to search the vehicle
20   under the *Carroll* doctrine. Absent probable cause, the warrantless search of Mr. Gearheart's van
21   was unconstitutional, and any evidence located therein must be suppressed.

22   **C. The search was unconstitutional because a marijuana-smelling water pipe, by**
23   **itself, does not establish probable cause to conduct a further search.**

24   Even if this Court credits Ranger Blade's assertion that the pipe smelled like marijuana,
25   that alone does not authorize a search of the vehicle absent additional, independent reason to
26   believe that more contraband will be found inside. Here, there was no articulable reason that
27   marijuana in the water pipe made it probable that there was additional contraband, besides the
28   recovered pipe, left to be found inside the vehicle. Thus, the ensuing search of Mr. Gearheart's

1    van violated his Fourth Amendment rights.

2         The scope of the search permitted under the automobile exception is limited in that the

3    officer may search only those areas of the automobile where there is probable cause to believe that

4    the contraband or evidence will be found. *See California v. Acevedo*, 500 U.S. 565, 580 (1991)

5    ("The facts in the record reveal that the police did not have probable cause to believe that

6    contraband was hidden in any other part of the automobile and a search of the entire vehicle would

7    have been without probable cause and unreasonable under the Fourth Amendment."); *see also*

8    *United States v. Ross*, 456 U.S. 798, 824 (1982) ("The scope of a warrantless search of an

9    automobile . . . is defined by the object of the search and the places in which there is probable

10   cause to believe that it may be found."). The duration of the search is also limited—that is, the

11   officer may search the automobile only until the contraband or evidence that the officer has

12   probable cause to believe is in the vehicle is located. *See Horton v. California*, 496 U.S. 128, 141

13   (1990) (noting that if a warrant authorizes a search for specific items and such items are found "at

14   the outset" or the defendant produces the items to the law enforcement officers, the search must

15   then cease (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 517 (1971) (White, J., dissenting)));

16   *see also Ross*, 456 U.S. at 825 (noting that a search conducted pursuant to the automobile exception

17   can be "no broader and no narrower than a magistrate could legitimately authorize by warrant").

18   In other words, once the contraband or evidence is found, the officer must terminate the search

19   absent probable cause to believe that additional contraband or evidence will be found. *See Horton*,

20   496 U.S. at 141.

21        In this case, Ranger Dell Isola claimed to have had probable cause to believe that there was

22   marijuana in the water pipe that he saw in Mr. Gearheart's vehicle. This specific water pipe is the

23   only source of any probable cause for a *Carroll* search. Though Mr. Gearheart advised Ranger

24   Dell Isola that the pipe was used for tobacco, which is an equally likely use as is marijuana, Ranger

25   Dell Isola still required Mr. Gearheart to remove the pipe from his van and allow it to be inspected.

26   Ranger Dell Isola's own inspection resulted in his belief that it was, as Mr. Gearheart said, tobacco

27   in the pipe. Only when another ranger insisted it was marijuana in the pipe did Ranger Dell Isola

28   decide to proceed with the search.

1    The Ninth Circuit has been clear "that probable cause to believe that some incriminating

2    evidence will be present at a particular place does not necessarily mean there is probable cause to

3    believe that there will be more of the same." *United States v. Weber*, 923 F.2d 1338, 1344 (9th Cir.

4    1990). For instance, in *United States v. Nora*, 765 F.3d 1049 (9th Cir. 2014), law enforcement

5    officers obtained a search warrant to search a house for a firearm after they observed the defendant,

6    who had two prior felon-in-possession convictions, carrying a firearm into the house and then

7    leaving the house without the firearm. *Id.* at 1051. The search warrant authorized the officers to

8    search for "firearms," rather than the single firearm the officers had observed the defendant

9    carrying into the house. *Id.* The Ninth Circuit, citing *Weber*, concluded that the search warrant was

10    overbroad, as "the officers' firsthand observations of [the defendant] with a gun in his hand did

11    not give them reasonable grounds to believe that any additional firearms would be found in the

12    house." *Id.* at 1059.

13    At no time did Ranger Dell Isola allege that he smelled marijuana—burnt or unburnt—as

14    a justification for his search. In fact, when Ranger Blade asked if there was anything, any smells,

15    that could form a basis for probable cause, Ranger Dell Isola responded "no." (*Ex. 2* at 38:13). His

16    only basis was seeing a water pipe that *could* be used for marijuana. But, given that Ranger Dell

17    Isola knew exactly where the alleged marijuana pipe was, there was no search warranted

18    whatsoever, as he did not have probable cause to believe that there was *additional* contraband or

19    evidence in the vehicle. If the rangers concluded that it was marijuana, then the search ends there

20    and the water pipe itself could be confiscated. No probable cause remained to conduct a warrantless

21    search through Mr. Gearheart's van. The evidence located during that search is due to be

22    suppressed.

23    **D. Effective federal decriminalization of marijuana negates probable cause for the**

24    **search.**

25    Even assuming *arguendo* that Ranger Dell Isola had reasonable suspicion of the water pipe

26    being marijuana, there lies the further issue of the fact that whether marijuana can truly serve as

27    independent reasonable suspicion to conduct a search for additional evidence of "contraband" in

28    light of the reality of the situation.

1    Despite finding a small amount of marijuana in the vehicle, Mr. Gearheart was not cited

2    with simple possession of marijuana. In fact, in light of the October 2022 presidential proclamation

3    that simple possession of marijuana offenses would be pardoned,[3] citations for simple possession

4    of marijuana has been very rarely issued, and even more rarely enforced throughout federal lands.

5    Though marijuana remains federally illegal, due consideration should be given to the fact that the

6    area surrounding the federal land—California—is a state where marijuana has been legal for over

7    two-and-a-half decades medicinally and nearly seven years recreationally. (*See, generally*

8    https://cannabis.ca.gov/cannabis-laws/laws-and-regulations/).

9    The widespread decriminalization of marijuana—and the recent push federally to reclassify

10   it from a Schedule I drug[4]—call into question the reasoning of the cases that hold that marijuana

11   provides reasonable suspicion for a warrantless vehicle search. The *Carroll* doctrine was based on

12   the idea that there was a difference "as to the necessity for a search warrant between [contraband]

13   when concealed in a dwelling house or similar place, and like [contraband] in course of

14   transportation and concealed in a moveable vessel where they readily could be put out of reach of

15   a search warrant." *Carroll*, 267 U.S. at 151. The movability of the vehicle, such that it could carry

16   away the potential contraband before a warrant could issue, being the crux of the issue. So, when

17   the "contraband" at issue is a little bit of burnt marijuana in a water pipe, for which the rangers

18   would not have actually sought a warrant anyway, the reason for the *Carroll* doctrine ceases to

19   exist. The rangers would not, and did not, issue a citation for simple marijuana possession, and

20

21   [3]   https://www.justice.gov/pardon/presidential-proclamation-marijuana-possession.  While  Mr.

22   Gearheart acknowledges that this "full, unconditional, and categorical pardon for prior . . . offenses
     of simple possession of marijuana" does not prevent someone from being charged prospectively,

23   there is a reason for that. An executive pardon is necessarily backward looking; one cannot pardon
     conduct that has not yet occurred. But it would defy logic to think that an offense that the President

24   of the United States finds should be fully, unconditionally, and categorically pardoned should

25   continue to be enforced or used to justify warrantless searches during otherwise routine traffic
     stops.

26   [4]https://thehill.com/policy/healthcare/4179304-hhs-sends-recommendation-to-dea-on-
     rescheduling-marijuana/ ("'In October 2022, President Biden requested that the HHS secretary

27   and the attorney general conduct a review of how marijuana is currently scheduled under federal
     law . . . Following the data and science, HHS has expeditiously responded to President

28   Biden's directive . . . and provided its scheduling recommendation for marijuana to the DEA on
     August 29, 2023,' an HHS spokesperson said.")

*United States v. Charles Gearheart*                    12                    *Motion to Suppress*

1   even if they had, the government likely would not have enforced it anyway. So, if the substance

2   allegedly giving rise to "reasonable suspicion" that the "automobile . . . contains that which by law

3   is subject to seizure and destruction," *Carroll*, 267 U.S. at 149, is not in fact treated as such, it

4   cannot possibly give the ranger probable cause to search the entirety of the vehicle.

5          This Court should therefore suppress all evidence obtained as a result of this unlawful

6   warrantless search.

7          **III.    This Court must suppress all statements obtained in violation of Mr.
              Gearheart's Fifth Amendment Rights, as interpreted in *Miranda*.**

8

9          Regardless of the validity of the search, this Court must suppress Mr. Gearheart's

10  statements while he was in custody but before he was provided with *Miranda* warnings.

11         The government may not use a defendant's statements against him at trial "unless it

12  demonstrates the use of procedural safeguards effective to secure the privilege against self-

13  incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Specifically, where a person is in

14  custody and being questioned, any statement made to law enforcement is admissible only if the

15  person was first advised of his right to remain silent, that any statement he does make may be used

16  as evidence against him, that he has the right to the presence of an attorney, and that, if he is unable

17  to afford to hire an attorney, an attorney will be appointed. *Id.*

18         "To determine whether an individual was in custody, a court must, after examining all of

19  the circumstances surrounding the interrogation, decide 'whether there [was] a formal arrest or

20  restraint on freedom of movement of the degree associated with a formal arrest.'" *United States v.*

21  *Kim*, 292 F.3d 969, 973 (9th Cir. 2002) (quoting *Stansbury v. California*, 511 U.S. 318, 322 (1994))

22  (alteration in original). In other words, the court "must determine whether 'the officers established

23  a setting from which a reasonable person would believe that he or she was not free to leave.'" *Id.*

24  at 973-74 (quoting *United States v. Beraun-Panez*, 812 F.2d 578, 580 (9th Cir. 1987)). In making

25  this determination, courts consider various factors, including: "(1) the language used to summon

26  the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the

27  physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of

28  pressure applied to detain the individual." *Beraun-Panez*, 812 F.2d at 580 (citing *United States v.*

1  *Wauneka*, 770 F.2d 1434, 1438 (9th Cir. 1985)). Typically, "the roadside questioning of a motorist

2  detained pursuant to a routine traffic stop [is not] considered 'custodial interrogation,'" as traffic

3  stops are "temporary and brief," public, and usually involve only one or two law enforcement

4  officers. *Berkemer v. McCarty*, 468 U.S. 420, 435, 437-39 (1984). Nevertheless, "[i]f a motorist

5  who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders

6  him 'in custody' for practical purposes, he will be entitled to the full panoply of protections

7  prescribed by *Miranda*." *Id.* at 440.

8          In this case, what may have begun as a "routine traffic stop" escalated into a greater

9  restraint on Mr. Gearheart's freedom of movement, such that he was entitled to the "full panoply

10 of protections prescribed by *Miranda*." *Id.* at 435, 440. Unlike the typical traffic stop envisioned

11 in *Berkemer*, Mr. Gearheart was frisked for weapons and then told to remove his dog from the

12 vehicle and stand outside with the dog while his vehicle was searched. Though he was not

13 handcuffed for the duration of the search, this is in large part due to the rangers not knowing how

14 to handle the presence of a large, allegedly unfriendly, dog. Despite not being physically

15 handcuffed until after the search was complete, there were at least eight armed rangers on the scene

16 for nearly the entire hour that Mr. Gearheart was forced to stand outside holding onto his dog. Mr.

17 Gearheart was watched by at least one or two rangers standing in close proximity with their

18 flashlights on him at all times while his van was searched. Even before the search of the van began,

19 Ranger Dell Isola was giving specific commands controlling where Mr. Gearheart could stand and

20 whether he was free to move from that spot. In total, the interaction lasted over two hours.

21          Under the circumstances, a reasonable person in Mr. Gearheart's position would have

22 understood that he was not free to leave. Thus, Mr. Gearheart was unquestionably "in custody" for

23 purposes of *Miranda*, if not when he was initially frisked for weapons by Ranger Dell Isola, then

24 at the latest at the 34:12-minute mark, when he was initially ordered to get his dog out of the

25 vehicle so that it could be searched and forced to stand under ranger supervision while the search

26 ensued. Because the rangers did not read Mr. Gearheart his *Miranda* rights until an hour later, this

27 Court must exclude from trial all statements obtained while the rangers interrogated Mr. Gearheart

28 prior to his *Miranda* warnings being provided.

1

2

3    Dated:  September 25, 2023

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

/s/  Kara R. Ottervanger
KARA R. OTTERVANGER
Assistant Federal Defender
Attorney for Defendant
CHARLES GEARHEART