UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>CHARLES EDWARD GEARHEART, JR.,<br><br>    Defendant. | Case No. 6:23-mj-00006-HBK-1<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

The Court having considered the evidence and evaluated the legal arguments presented finds:

1. Defendant Charles Edward Gearheart, Jr. GUILTY of Camping Outside of Designated Sites or Areas in violation of 36 C.F.R. § 2.10(b)(10) for conduct occurring on June 12, 2023 within the boundaries of Yosemite National Park as charged in Count One of the Second Superseding Information.

2. Defendant Charles Edward Gearheart, Jr. GUILTY of Knowingly Giving False Information to an Authorized Person in violation of 36 C.F.R. § 2.32(a)(3)(i) for conduct occurring on June 12, 2023 within the boundaries of Yosemite National Park as charged in Count Three of the Second Superseding Information.

////

////

////

1

**Findings of Fact**

This matter was tried before the Court on March 17, 2025 with the United States represented by Mr. Chan Hee Chu and Mr. Cody Chapple, and Defendant represented by Ms. Kara Ottervanger and Ms. Lisa Lumeya. The United States presented the testimony of National Park Service Rangers: (1) Stephany Hesse, (2) Christopher Dell Isola, (3) Ian Rippetoe, and (4) Aaron Zavesky. The Defendant presented testimony of Paige Bowling and Vincent Lee.[1] Both parties entered video evidence, specifically the body camera recordings from Rangers, Dell Isola, Zavesky and Rippetoe (Government Exhibits 2, 3, 4 and Defendant Exhibits AU, AV, BP, AN, BE, BD, respectively). The United States also introduced a signed copy of the Superintendent's Compendium. (Exhibit 5).

1. On June 12, 2023, Defendant traveled to Yosemite National Park to attend a court hearing scheduled for the following day. At approximately 11:00 p.m., Rangers Dell Isola[2] and Jacob Blade were on patrol together in the Park. At that time, Ranger Dell Isola observed Defendant's van parked at a turnout located on Northside Drive west of Michaels Ledges. This area is in a non-wilderness area of the Park and is not designated for camping. Defendant's van had foil shades covering the driver's side, passenger's side, and front windows. Based on Ranger Dell Isola's training and experience he suspected the occupant was camping out of bounds.

2. After approaching the van, Ranger Dell Isola announced himself as law enforcement and spoke with Defendant, who was in the cargo area on the passenger side of the van. During the interaction, Defendant told Ranger Dell Isola that he had to put on his clothes. Defendant also explained that he was in the Park to attend a court hearing the next day and that he had a dog in the van. Upon request, Defendant provided his name, date of birth, and that he was a resident of California. While Ranger Dell Isola was speaking with Ranger Blade concerning a potential issue involving the dog, Defendant volunteered to put his shoes on and step

---

[1] Due to difficulties accessing the Yosemite Courthouse caused by adverse weather conditions, it was unclear whether Paige Bowling would testify at trial. In response to this uncertainty, the defense called Vincent Lee, an investigator for the Federal Public Defender, who had been present in the courtroom during the trial proceedings in violation of Federal Rule of Evidence 615. However, this issue became moot when Paige Bowling ultimately testified via Zoom videoconference.

[2] Ranger Dell Isola started his field training in May 2023 and completed his field training in August 2023.

2

outside. After Defendant exited the vehicle and put on his shoes, Ranger Dell Isola asked Defendant: (1) if he had any guns on his person; (2) if he had any guns in his vehicle (while gesturing toward the van); and (3) if he had any other weapons or knives on his person. To these specific questions, Defendant answered: (1) "No, I don't;" (2) "No . . . no I'm just tryin' to, I'm just tryin' to tighten my belt;" and (3) "No, I have nothing on me. . . You can pat me down."

3. After relocating to the front area of the vehicle, Ranger Dell Isola proceeded to conduct a pat-down of Defendant. About a minute and a half into the pat-down, Defendant became unsteady on his feet. Ranger Dell Isola offered to call an ambulance. Defendant denied taking any drugs, admitted to consuming one beer an hour earlier, stated he had been asleep, stated he had not eaten, and claimed he was "nervous" about the dog. Ranger Dell Isola resumed the search. Defendant became unsteady again and went to the ground and appeared to lose consciousness for a moment. Rangers called Emergency Medical Services. Rangers Stephany Hesse and Aaron Zavesky, who had arrived on the scene as backup, attended to Defendant's medical needs until Emergency Medical Services personnel arrived.

4. Defendant was medically cleared and Ranger Dell Isola completed the previously interrupted pat-down.

5. Ranger Rippetoe, a supervisory ranger, responded to the scene. Ranger Rippetoe stood near Defendant and his dog while the Rangers began a search of the van. Ranger Zavesky entered the cargo door side of the van where Ranger Dell Isola was conducting the search. A knife was visible on a board inside the van as Ranger Zavesky entered. Ranger Zaveskyproceeded to enter the front of the van and initially searched near the driver's side of the vehicle. Defendant then volunteered to Ranger Rippetoe that there was a gun in the front passenger seat of the van. Ranger Rippetoe loudly relayed the information to the Rangers searching the vehicle. Ranger Zavesky discovered a Mossberg 590 Shockwave 12-gauge shotgun contained within a cardboard box in the front passenger seat of the vehicle.

6. The parties stipulated that on June 12 and June 13, 2023, the state of California was observing Daylight Savings Time. (Doc. No. 73).

3

7. The parties stipulated that California is in the Pacific time zone. (Doc. No. 73).

8. The parties stipulated that UTC, coordinated universal time, is -7 hours (or 7 hours ahead) of Pacific Daylight Time. (Doc. No. 73).

9. The parties stipulated that Defendant's actions, as alleged in the Second Superseding Information, if they occurred, occurred within Yosemite National Park, within the boundaries of federally owned lands and waters administered by the National Park Service. (Doc. No. 73).

10. The parties further agreed that the Court may take judicial notice of Government Exhibit 5: 2022 Yosemite National Park Compendium (signed).

## Conclusions of Law

**A. Out-of-Bounds Camping**

1. In Count One of the Second Superseding Information, Defendant is charged with camping outside of a designated area in violation of 36 C.F.R. § 2.10(b)(10), which prohibits "[c]amping outside of designated sites or areas." "Camping," under the code of federal regulations includes "parking of a motor vehicle . . . for the apparent purpose of overnight occupancy." 36 C.F.R. § 1.4.

2. The elements of the offense, which must be proved beyond a reasonable doubt, are:
    a. Defendant parked a motor vehicle for the apparent purpose of overnight occupancy;
    b. The motor vehicle was parked in an area or site not designated for camping; and
    c. Defendant's act occurred within Yosemite National Park, within the boundaries of federally owned lands and waters administered by the National Park Service. 36 C.F.R. § 1.2(a)(1).

3. There is no mens rea requirement for this offense. *See United States v. Sears*, 652 F. App'x 553, 554–55 (9th Cir. 2016).

4. Locations in Yosemite National Park where people may camp are restricted and camping in non-designated areas is prohibited. *See* Yosemite Superintendent's Compendium (Defendant's Exhibit 5). A permit for all camping in Yosemite National Park is required and

4

      camping in non-wilderness areas in Yosemite Valley include Upper Pines, Lower Pines, North Pines, Camp 4, and the backpackers campground.  (*Id*.).

5. The video and testimonial evidence shows beyond a reasonable doubt that Defendant parked a motor vehicle for the apparent purpose of overnight camping on June 12, 2023.  Ranger Dell Isola first encountered Defendant inside his van at approximately 11:00 p.m.  The van's front and side windows were covered with foil shades.  Defendant admitted to Ranger Dell Isola that he needed to put on clothing, was asleep, and was in the Park for a court hearing the next day.

6. The video and testimonial evidence shows beyond a reasonable doubt that Defendant's van was parked in an area or site not designated for camping.  Specifically, the van was parked in a pull out on Northside Drive west of Michaels Ledges.  This area is not designated as a camping site.  *See* Yosemite Superintendent's Compendium (Defendant's Exhibit 5).

7. The parties stipulate that Defendant's actions occurred within Yosemite National Park, within the boundaries of federally owned lands and waters administered by the National Park Service.  (Doc. No. 73).  Further, the testimonial and video evidence demonstrate beyond a reasonable doubt that the actions took place within Yosemite national Park.

8. Accordingly, the Government has established beyond a reasonable doubt each of the elements for the Court to find that Defendant GUILTY of engaging in out of bounds camping as prohibited by 36 C.F.R. § 2.10(b)(10).[3]

**B. Knowingly Giving False Information**

1. In Count Three of the Second Superseding Information, Defendant is charged with a violation of 36 C.F.R. § 2.32(a)(3)(i) which prohibits "[k]nowingly giving a false or fictitious

---

[3] Defendant, in closing, advanced a necessity defense given Defendant's later physical state.  A defense of necessity requires a defendant to show that: (1) he was faced with a choice of two evils and chose the lesser evil; (2) he acted to prevent imminent harm; (3) he reasonably anticipated a causal relation between his conduct and the harm to be avoided; and (4) there were no other legal alternatives.  *United States v. Arellano–Rivera,* 244 F.3d 1119, 1125 (9th Cir.2001).  Defendant's necessity defense fails for various reasons.  First, Defendant denied needing emergency medical services.  Further, and significantly, there was no evidence introduced as to when Defendant parked the van and made the decision to spend the night in the location where it was parked to suggest harm was imminent.

5

report or other false information[ ] [t]o an authorized person investigating an accident or violation of law or regulation."

2. The elements of the offense, which must be proved beyond a reasonable doubt, are:
   a. Defendant knowingly gave false information to an authorized person;
   b. The authorized person was investigating a violation of law or regulation; and
   c. Defendant's act occurred within Yosemite National Park within the boundaries of federal owned lands and waters administered by the National Park Service. 36 C.F.R. § 1.2(a)(1).

3. When interpreting the scope of a federal regulation the Court first look to the regulation's plain language. It is presumed that the drafters of a regulation ". . . said what they meant and meant what they said." *See United States v. Bucher,* 375 F.3d 929, 932 (9th Cir. 2004). Accordingly, unless such an interpretation leads to an absurd result, the plain meaning of a regulation controls the Court's interpretation of the regulation. *Id*. The Court must also give effect to each term of the regulation. *See, e.g., American Rivers v. FERC,* 201 F.3d 1186, 1204 (9th Cir. 2000).

4. "Knowingly" is not defined in the regulations. "An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake, or accident." Ninth Circuit Model Jury Instruction – 4.8 (2022 Edition – last revised Sept. 2022). However, "[i]n criminal law, 'knowing' describes a lower level of scienter than 'willful.'" *United States v. Singh*, 979 F.3d 697, 727 (9th Cir. 2020) (citing *Bryan v. United States*, 524 U.S. 184, 188 (1998)). As the Ninth Circuit explained:

> The term knowingly does not necessarily have any reference to a culpable state of mind or to knowledge of the law. The knowledge requisite to [a] knowing violation of a statute is factual knowledge as distinguished from knowledge of the law. Therefore, unless the text of the statute dictates a different result, the term knowingly merely requires proof of knowledge of the facts that constitute the offense.

*Id*. The required mens rea can be shown by circumstantial evidence derived from the surrounding circumstances. *See, e.g., Bucher*, 375 F.3d at 934.

5. Ranger Hesse testified that she had an encounter with Defendant earlier, on January 4, 2023. In that encounter, Hesse had advised Defendant of the importance of disclosing whether there is a firearm in the vehicle when asked by law enforcement.[4]

6. The relevant determination for the Court is whether Defendant knew that his response "No" to Ranger Dell Isola's questions as to whether he had a gun inside the vehicle was untruthful. Upon his initial contact with Ranger Dell Isola, Defendant clearly answered the Ranger's line of questioning with sufficient competence based on the body camera footage admitted into evidence. After providing his name, date of birth, and residency, and overhearing the Rangers' exchange about a potential issue related to the dog, Defendant volunteered to put on his shoes and step out of the vehicle. This indicates that, at this time, Defendant was oriented, cognizant of his surroundings, and sufficiently alert to proactively offer a solution concerning his dog. When exiting the van, Defendant did not appear unsteady. He showed no difficulty in slipping on his shoes and stepping down from inside the van onto the dark pavement, despite having only the limited lighting from the Ranger's flashlight. Ranger Dell Isola then posed three clear questions. Although posed in succession, they were not asked in a rapid-fire succession. To each question, Defendant answered "no" and then offered a further comment. In response to whether he had any guns <u>on</u> <u>his</u> <u>person</u>, Defendant said "No, I don't." In response to whether there were any guns <u>in</u> <u>the</u> <u>vehicle</u>, as Ranger Dell Isola gestured toward Defendant's van, Defendant stated, "No" and while fixing his pants further offered "no I'm just tryin' to, I'm just tryin' to tighten my belt." In response to whether Defendant had any other weapons <u>on</u> <u>his</u> <u>person</u>, Defendant stated, "No, I have nothing on me . . . You can pat me down." The Court finds no evidence at this point in time that Defendant was not coherent or that he did not understand the question of whether there was a gun inside the vehicle. The Court further finds Defendant's answer of "No" to be unequivocal. To the extent that Defendant made further remarks about the need to tighten his pants, the Court finds that the remarks, along with his fumbling with his pants, could be

---

[4] Over objection by the defense, the government introduced Ranger Hesse's testimony about her prior encounter for the limited purpose of knowledge, intent, accident, and absence of mistake as to the false information charge.

interpreted as an attempt to redirect Ranger Dell Isola's attention away from the investigation.[5]

7. Ranger Zavesky testified and his body camera recording showed a firearm in the front passenger side of Defendant's vehicle, specifically a Mossberg 590 Shockwave 12 gauge shotgun contained in a cardboard box. Defendant volunteered that there was a gun in the vehicle, but only after Ranger Zavesky began a search of the front portion of the van. The Court further finds Defendant's spontaneous admission of the firearm as persuasive evidence that he knew his earlier statement about whether there was a firearm in the vehicle was untruthful because he did not volunteer that there were other weapons in the van.

8. The Court finds that the direct and circumstantial evidence shows beyond a reasonable doubt that Defendant knowingly provided Ranger Dell Isola with false information when he responded, "No" to Ranger Dell Isola's question as to whether there were any guns in the vehicle.

9. The Court concludes that Ranger Dell Isola, acting as a law enforcement officer with the National Park Service, qualifies as an "authorized person" under the regulation.

10. The Court concludes that Ranger Dell Isola was investigating a violation of law or regulation—namely out-of-bounds camping within the federal enclave of Yosemite National Park—when he inquired as to whether there was a gun inside the vehicle.

11. The parties stipulate that Defendant's actions occurred within Yosemite National Park, within the boundaries of federally owned lands and waters administered by the National Park Service. (Doc. No. 73). Further, the testimonial and video evidence prove beyond a reasonable doubt that the actions took place within Yosemite national Park.

---

[5] In closing, Defendant argued that Defendant's subsequent weakness and temporary loss of consciousness during the pat down evidenced Plaintiff's confusion as to the initial questioning. The Court finds these events occurring after the initial questioning do not undermine Defendant's ability to understand the earlier questions posed by Ranger Dell Isola. Defendant's later professed nervousness can also be interpreted as evidence of wrongdoing. *See United States v. Hanson*, No. 3:18-CR-61-HBG, 2018 WL 4223320, at *8 (E.D. Tenn. Sept. 5, 2018) ("Although an individual's nervousness alone is a 'weak' and 'unreliable indicator' of criminal activity, particularly in the context of a traffic stop, nervousness is a factor that may be considered along with other factors as a part of the totality of the circumstances indicating a crime is afoot." citing *United States v. Johnson*, 482 F. App'x 137, 145 (6th Cir. 2012)).

8

12. Accordingly, the Government has established beyond a reasonable doubt each of the elements for the Court to find Defendant GUILTY of knowingly giving false information in violation of 36 C.F.R. § 2.32(a)(3)(i).

Dated:   March 20, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE